## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| D.P., as parent and natural guardian of W.M., a minor, and in their own right,<br><br>                    Plaintiff<br><br>     v.<br><br>UPPER PERKIOMEN SCHOOL DISTRICT<br><br>and<br><br>KRISE TRANSPORTATION, INC.<br><br><br>                    Defendants. | **CIVIL ACTION NO. 2:25-cv-04787**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs D.P. and W.M., by and through their undersigned counsel Laffey Bucci D'Andrea Reich & Ryan, hereby bring the following Complaint before this Honorable Court and aver the following in support thereof:

## JURISDICTIONAL STATEMENT

1.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1343, which gives district courts original jurisdiction over any civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

2.     This Court has supplemental subject matter jurisdiction over all related state claims herein pursuant to 28 U.S.C. § 1367, which gives federal district courts jurisdiction over all other

claims related to claims in the action by which the Court has original jurisdiction that are arising out of the same case or controversy under Article III of the United States Constitution.

3.    Plaintiffs bring this action to redress a hostile educational environment where Plaintiff was subject to harassment, bullying and abuse and has standing to bring forth his claim pursuant to Tile IX of the Education Amendments of 1972 and Violation of 42 U.S.C. § 1983, as set forth more fully herein.

4.    Plaintiffs also seek redress under the Pennsylvania common law theories of negligence and negligence *per se* against Defendant Krise Transportation.

5.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b), since all defendants reside in this district, and the events giving rise to the claims occurred in this district

## PARTIES

6.    Plaintiff, D.P., is the parent and legal guardian of Plaintiff, W.M., a minor who was assaulted, bullied, and harassed, and whose identities and address are not contained in this Complaint so as to protect their privacy and identity as Plaintiff W.M., a juvenile, who incurred injuries and damages of a sensitive nature as a result of the deliberate indifference, willful and wanton conduct, negligent acts and failures to act of Defendants as outlined below. Although Fed. R. Civ. P. 10 requires a complaint to contain the names of all parties, Pennsylvania federal courts have adopted a standard that balances the public's right to access civil judicial proceedings versus the private interests to justify pseudonymity.[1] Information which would or could identify Plaintiffs is not contained herein.  Plaintiffs may be contacted through their counsel as outlined herein.

---

[1] *See Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997); *See also K.W. v. Holtzapple*, 299 F.R.D. 438, 442 (M.D. Pa. 2014) (factors favoring anonymity include risk of retaliatory physical or mental harm, the need to preserve privacy in sensitive and highly personal matters, and the potential deterrence of plaintiffs from pursuing their claims due to fear of harm). Plaintiffs will be filing a motion to proceed under pseudonym forthwith.

7.     There exists good cause for Plaintiffs to use a pseudonym due to the harmful effect of the public disclosure of their identity and the harm inflicted by the Defendants to Plaintiff W.M., especially since Plaintiff W.M. is still a minor. Plaintiffs' undersigned counsel will provide the identity of Plaintiffs to Defendants. As such, Defendants suffer no prejudice as a result of concealing Plaintiffs' identity in the Complaint and Verification.

8.     Defendant Upper Perkiomen School District ("UPSD") is a municipal entity and public school in the Commonwealth of Pennsylvania, organized and existing under the laws of Pennsylvania with a principle business at 2229 East Buck Road, Pennsburg, PA 18073. At all times relevant, UPSD was the recipient of federal funds for its operation and the operation of Upper Perkiomen High School. Further, such federal financial assistance was provided to UPSD to accommodate the needs its students, including Plaintiff W.M..

9.     Upper Perkiomen High School ("UPHS") is a public high school located at 2 Walt Road, Pennsburg, PA 18073. UPHS is within the UPSD and subject to its control, oversight, supervision, and management. At all times relevant, UPHS was the recipient of federal funds for its operation.

10.     Upper Perkiomen Middle School ("UPMS") is a public middle school located at 901 Montgomery Avenue, Pennsburg, PA 18073. UPMS is within the UPSD and subject to its control, oversight, supervision, and management. At all times relevant, UPHS was the recipient of federal funds for its operation.

11.     Defendant Krise Transportation, Inc. ("Krise") is a bus company with a primary place of business at 1325 Scotland Avenue Extension, Punxsutawney, PA 15767. At all times relevant, Krise contracted with UPSD to provide bus and transportation services to students of UPSD schools, including students enrolled at UPHS. Krise Transportation promotes itself as a

leader in Pennsylvania for safe, reliable student transportation programs. Thirty Pennsylvania school districts, including Defendant UPSD, trusted Krise to transport their students safely and efficiently.

12.    At all relevant times, the Defendants acted by and through their employees and agents, actual and apparent, and/or ostensible for whom each Defendant is vicariously liable under Pennsylvania and federal law.

## FACTUAL BACKGROUND

13.    This action arises from the deliberate indifference of Defendant UPSD as well as the failures and negligent, reckless, and careless conduct of UPSD, UPHS and Krise to prevent severe physical and mental abuse, bullying, harassment, and torment that Plaintiff W.M. endured at the hands of fellow students at UPHS, for months on end. These failures directly caused Plaintiff W.M. severe harm.

14.    Plaintiff W.M. is a fifteen-year-old transgender male who, at all relevant times, was enrolled at UPHS, a public high school owned, operated, managed, controlled, and supervised by Defendant UPSD.

15.    Plaintiff W.M. brings this action after years of bullying, harassment, and abuse he faced for being a transgender male. Plaintiff W.M. was subject to such adverse treatment on the basis of his biological sex and failure to conform to societal norms and/or present himself in a manner which aligned with gender stereotypes.

16.    The gender-based violence against Plaintiff W.M. began as early as when he was a fifth-grade student in UPSD attending UPMS.

17.    Plaintiff thereafter repeatedly suffered gender-based violence while attending public school under UPSD.

18.     In the fifth grade, W.M. disclosed to the guidance counselor at UPMS that he was transgender. Instead of providing him with support, the guidance counselor called W.M.'s grandmother and told her.

19.     W.M. had not yet disclosed to his grandmother that he identified as a male.

20.     At this time, Plaintiff endured hateful verbal harassment and abuse, which included but was not limited to, being called names such as "faggot", "tranny", "lesbo," "slut", "whore", and "anorexic." The verbal abuse also included phrases such as "kill yourself", "gay people should be killed," and "your dad killed himself because you're gay."

21.     Plaintiff also experienced physical harassment and abuse while he was in middle school, including but not limited to pushing, shoving, shoulder-checking, and having his belongings taken from him.

22.     Plaintiff W.M. experienced this severe verbal abuse and physical harassment regarding his sex and gender, all because he did not conform to gender stereotypes.

23.     Upon information and belief, all of the aforementioned physical and verbal abuse, bullying, and harassment occurred on school grounds at UPMS during school hours, during class and in the hallways.

24.     Many reports were made to UPMS by Plaintiff W.M.s' mother, Plaintiff D.P., which resulted in verbal in-person meetings with counselors and principals at the school. However, nothing changed. No protections were ever put in place for W.M..

25.     Not only was UPMS aware of the gravity of the situation, but due to the relentless torment that Plaintiff experienced daily, and continues to experience, Plaintiff had thoughts of self-harm and suicidal ideation.

26.     Because the bullying, harassment, and verbal and physical abuse continued, with no intervention from UPMS, Plaintiff attempted to take his life while he was still in middle school.

27.     It was after this attempt that staff from UPMS called Plaintiff D.P. and stated that they wanted Plaintiff W.M. to be hospitalized because of his state of mind.

28.     Plaintiff W.M. then spent a week at Horsham Clinic because of the constant verbal and physical abuse he faced because of his gender.

29.     Despite Plaintiff W.M. being hospitalized for the constant torment, harassment, bullying, and abuse caused by other students in UPSD, no actions were taken by the school or school district to have a safety plan in place for W.M.

30.     In 2023, the CDC conducted a youth risk behavior survey, specifically focused on how transgender high school students experience disparate health outcomes and challenges in school, including violence and discrimination, compared with cisgender students.[2]

31.     This study found that transgender and questioning students face a higher prevalence of experiencing violence, poor mental health, suicidal thoughts and behaviors, and unstable housing and a lower prevalence of school connectedness compared with their cisgender peers.[3]

32.     The CDC found that approximately 40% of transgender and questioning students were bullied at school, and approximately 26% of transgender and questioning students attempted suicide in the past year, compared with approximately 5% of cisgender males.[4]

---

[2] *See* Centers for Disease Control and Prevention, *Disparities in School Connectedness, Unstable Housing, Experiences of Violence, Mental Health, and Suicidal Thoughts and Behaviors Among Transgender and Cisgender High School Students*, (Oct. 10 2024), https://www.cdc.gov/mmwr/volumes/73/su/su7304a6.htm.
[3] *Id*.
[4] *Id*.

33.    Approximately one fourth of transgender and questioning students missed school because of feeling unsafe in the past month compared to 8.5% of cisgender male students and 14.9% of cisgender female students.[5]

34.    Additionally, among transgender students, 64.9% reported poor mental health in the past thirty days and 71.9% reported persistent sadness or hopelessness in the past twelve months.[6]

35.    Accordingly, transgender and questioning persons, especially teenagers, experience stigma, discrimination, and social marginalization related to their gender as a result of the institutionalized social norms. Thus, the accumulation of stressors, including internalization and stigmatized attitudes, expectations of rejection, and experiences of discrimination and violence, can increase the likelihood that they experience poor mental health that leads to other disparities in the future in their health and well-being.[7]

36.    Although violence, poor mental health, and suicide are not caused by any single factor, and prevention will not be achieved by any single strategy, strategies that create safe and supportive environments inclusive of transgender students that promote school connectedness can improve the health and well-being of transgender students across a range of outcomes.[8]

37.    Here, Plaintiff W.M. was specifically targeted, harassed, and discriminated against on the basis of his biological sex and based on the fact that he did not conform to gender stereotypes or present as a member of the female biological sex.

38.    Upon information and belief, Plaintiff D.P. met with employees of UPMS numerous times to address the bullying that Plaintiff W.M. was suffering because of his gender.

_____

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

39.     Defendant UPSD and UPHS knew or should have been aware of the aforementioned statistics or, alternatively, knew or should have known that transgender students in their schools were more at risk of adverse treatment from fellow students than other groups within the school.

40.     At a bare minimum, Defendant UPSD and UPHS knew or should have known that Plaintiff W.M. had already been bullied while he was a student at UPMS and failed to create any safety plan for him as he continued his education, despite being on notice that he was already feeling severe thoughts of self-harm and suicidal ideations.

41.     As a result of the aforementioned failures of UPSD, the verbal bullying and harassment only escalated when Plaintiff began attending UPHS.

42.     The name calling by other students did not stop, as they continued to call Plaintiff derogatory terms and told him to kill himself.

43.     The verbal bullying, torment, and harassment occurred while Plaintiff W.M. would be walking in the hallways and while he was in class at UPHS.

44.     Because of this, Plaintiff W.M. frequently used the school's emotional support room.

45.     Upon information and belief, the staff members of UPHS would also refuse to use Plaintiff W.M.'s preferred name and pronouns.

46.     Upon information and belief, all of the verbal bullying and harassment occurred on UPHS grounds during school hours by staff members of UPHS and other students who went to UPHS and were a part of UPSD.

47.     Additionally, W.M. was verbally bullied by fellow UPHS student James Doe on the busses owned, operated, and supervised by Krise through its agents and employees.

48.     W.M. was bullied all of the 2023-2024 school year by another student, James Doe, on the busses owned, operated, and supervised by Krise through its agents and employees.

49.     Despite the open, apparent, and continued bullying that occurred to Plaintiff W.M. while under the supervision of Krise agents and employees, the bus driver did not report the behavior or make an effort to intervene and stop the vicious bullying of W.M.

50.     Numerous complaints were made by Plaintiff D.P. to UPHS regarding how W.M. was treated at school by children and employees of UPSD, and she even attended several meetings with school administrators, emotional support teachers, and Todd Amsler, an assistant principal of UPHS to discuss the harassment her child was experiencing on a daily basis.

51.     Upon information and belief, Plaintiff D.P. met with employees of UPHS on at least three separate occasions to discuss the treatment of her son, W.M.

52.     Upon information and belief, Plaintiff D.P. also informed employees of UPHS of the severe bullying that was continuously occurring on the busses owned, operated, and supervised by Defendant Krise.

53.     Defendant Krise and its employees and agents operating the bus wherein W.M. was harassed, bullied, and tormented knew or should have known that there was bullying on the bus, specifically to transgender students like W.M.

54.     Upon information and belief, no action was taken by the bus driver to stop the bullying against W.M. or to discipline James Doe, even though the bullying was a frequent issue and done out in the open on the bus.

55.     Defendant Krise had a duty to protect all students on the bus and create a safe environment for them, including Plaintiff W.M.

56.     Despite all of the reports of bullying specifically on the bus, Defendant Krise did not take any action to prevent or mitigate what subsequently happened to Plaintiff W.M.

57.     During the spring of 2024, there were multiple incidents that occurred on the busses owned, operated and supervised by Krise.

58.     These incidents involved W.M., June Doe (at the time, a child who identified as a transgender male student), and James Doe, who was already known for harassing and tormenting W.M.

59.     Upon information and belief, all of the students on the bus including W.M. and June Doe had assigned seating.

60.     On April 3, 2024, James Doe smacked June Doe, who identified as a transgender male at the time, across the face while he was sitting in the seat in front of her and called her a faggot.

61.     James Doe targeted June Doe specifically because she identified as a transgender male and did not present as a biological female or conform to female gender stereotypes.

62.     June Doe and her father reported this to UPHS, but no action was taken by either Defendant UPHS or Krise to make sure this behavior did not continue.

63.     This directly led to an incident on May 31, 2024, wherein Plaintiff W.M. was being transported on a bus owned and operated by Defendant Krise Transportation from Western Center Tech School to UPHS.

64.     On this day, James Doe sat behind Plaintiff W.M. and his friend, June Doe, who at the time of the incident, identified as a transgender male.

65.     James Doe poured a water bottle on them, while another child, James Doe's friend, videotaped this incident.

66.     The act of pouring water on James Doe *and* the act of filming it were done in order to humiliate Plaintiff W.M. and his friend.

67.     After James Doe poured a water bottle on Plaintiff W.M., Plaintiff turned around and poured a water bottle back on James Doe.

68.     At this time, Plaintiff W.M. believed that James Doe was trying to hit his friend, June Doe, and so he grabbed James Doe's shirt.

69.     James Doe then began punching Plaintiff W.M. multiple times in the head with a closed fist.

70.     When June Doe, who still identified as a transgender male at this time, attempted to intervene, James Doe also punched her in the face as well.

71.     As a result of James Doe's physical assault of Plaintiff W.M., he suffered physical injuries which included a lump on his head and a concussion, which necessitated medical care.

72.     Upon information and belief, no action was taken by Krise against James Doe to stop, interrupt, or even reprimand him for assaulting Plaintiff W.M., even though there had been numerous previous incidents that were reported.

73.     When Plaintiff W.M. arrived at UPHS, he went to the school's nurse's office to receive medical treatment.

74.     No one from UPHS called D.P. to let her know that her son was injured. In fact, it was Plaintiff W.M. who called his mother from the nurse's office an hour later.

75.     When Plaintiff D.P. asked to speak to the school nurse, she told her that Plaintiff W.M. could have suffered a concussion as a result of the assault.

76.     Plaintiff D.P. subsequently picked Plaintiff W.M. up from UPHS and took him to the hospital, where he was then diagnosed with a concussion.

77.     Surprisingly, as a result of the aforementioned assault, Plaintiff W.M. was also reprimanded and punished by UPHS administrators. Somehow, for being the victim of bullying and physical violence, Plaintiff W.M. was suspended for three days. Defendant UPSD and UPHS therefore added insult to injury.

78.     Nevertheless, the harassment and bullying of W.M. tragically did not stop here.

79.     While Plaintiff W.M. was at home resting from the injuries he sustained because of the negligence and deliberate indifference of Defendants UPSD and Krise Transportation, students from UPHS were posting stories on two different Snapchat groups set up for students in the 2026 and 2027 graduating classes.

80.     Upon information and belief, on the social media application Snapchat, members may join communities, including school community pages such as the UPHS 2026 and UPHS 2027 Snapchat groups.

81.     Upon information and belief, members of these communities can post "stories" to the Snapchat community which will disappear after 24 hours.

82.     Upon information and belief, all members of the Snapchat community can view the stories posted by other members in the community.

83.     In the wake of Plaintiff W.M.'s assault on May 31, 2024, individuals in these two Snapchat communities posted of hateful stories, such as, but not limited to, posts reading "equal rights, equal fights," "the trannies [sic] started it," and "fuck the lgbtq or what ever their [sic] called."

84.     These stories were clearly directed at Plaintiff W.M. and June Doe, as one post even included their names.

85.     Additionally, upon information and belief, on Snapchat, users can create a "spotlight", where users can post pictures and videos on their individual accounts.

86.     Upon information and belief, the posts on an account holder's "spotlight" do not get deleted after a certain amount of time.

87.     Upon information and belief, other users can comment on the "spotlight" posts.

88.     Upon information and belief, posts directed at Plaintiff W.M. and his friend June Doe were posted on "spotlight."

89.     One of the posts was a picture of a group of children, including Plaintiff W.M., who all appear to be dressed for a PRIDE event.

90.     Comments on this post included derogatory remarks such as "clown show", "wtf", and "what the hell."

91.     Plaintiff D.P. informed Mr. Flanagan, the principal of UPHS, of these Snapchat groups and requested that they be taken down. However, the groups remained active, and the disgusting and hateful comments aimed at Plaintiff W.M. continued unfettered.

92.     Upon information and belief, every time Plaintiff D.P. brought her concerns to faculty, staff, or other members at UPHS, the response she received from the UPHS administration was akin to "thank you for letting us know" and "we are not allowed to tell you how we will take care of it."

93.     Despite everything that happened to Plaintiff W.M., because of the failure of UPHS and Krise Transportation to protect W.M. and other transgender students, the bullying, harassment, and torment continued.

94.     The following school year, on November 6, 2024, the day after the United States presidential election, Plaintiff W.M. was riding the bus—owned and operated by Defendant Krise—to school and other students were making anti-transgender comments, such as "your body my right."

95.     When Plaintiff W.M. informed his school counselor that these comments made him upset, the counselor recommended that he stay home from school for the rest of the week.

96.     As a result of the above-described conduct, Plaintiff W.M. has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including sleeplessness and nightmares, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

97.     Furthermore, Plaintiff W.M. suffered physical harm from above-described conduct, including a concussion, and continues to suffer with post-concussion syndrome which requires not only speech therapy but also physical therapy.

98.     As a direct and proximate result of the aforementioned harassment, bullying, and abuse—enabled by the failures of the Defendants—Plaintiff not only suffered physical and emotional injuries, as more fully set forth in this Complaint, but he also experienced a complete loss of educational benefits and opportunities afforded to him.

99.     Because of the substantial control UPSD and UPHS had over James Doe, their actual knowledge of the bullying, harassment, and abuse, and their deliberate indifference to the harassment, bullying and abuse perpetrated by James Doe and other students of UPHS, Plaintiff W.M. was severely psychologically and physically damaged. Plaintiff experiences severe anxiety and depression and has repeated and disturbing memories and thoughts of being physically and verbally harassed, and has constant feelings of isolation, as well as experiences suicidal ideations.

100.    Defendant UPSD and UPHS' deliberate indifference towards the severe and pervasive harassment substantially interfered with Plaintiff W.M.'s access to education, educational benefits, and educational opportunities.

101.    All of the above physical, psychological, and emotional injuries were proximately caused by the negligence, carelessness, recklessness, and other tortious and outrageous acts or omissions of Defendants as set forth in this Complaint. Plaintiff's injuries were caused solely by the willful and deliberate indifference and negligence of UPSD, UPHS, and Krise Transportation as set forth more fully herein and were not caused or contributed thereto by any negligence on the part of Plaintiff.

## COUNT I
## VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972
### *Plaintiff D.P. on behalf of Plaintiff W.M. v. Defendant UPSD*

102.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

103.    As a direct and proximate result of Defendant Upper Perkiomen School District's (hereinafter "UPSD") deliberate indifference to known acts of harassment, bullying, and abuse, so severe, pervasive, and objectively offensive within its school, that Plaintiff W.M. was effectively barred access to educational opportunity and educational benefits in violation of Title IX of the Educational Amendments of 1972.

104.    Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681 *et seq.*

105.    Under the requirements of Title IX, schools that receive federal funds have a legal obligation to protect students from gender-based violence, including sexual assault and harassment.

106.    Title IX is implemented by the United States Department of Education ("US DOE"), which oversees enforcement of, and compliance with Title IX through its Office for Civil Rights ("OCR").

107.    OCR evaluates, investigates, and resolves complaints alleging sex discrimination.

108.    A federal funding recipient may be held liable for the harassment of a victim when the recipient exercises substantial control over the harasser and the context in which the harassment occurs.

109.    The bullying and verbal abuse and name calling of Plaintiff occurred during school hours and on school district property, in the hallways and the classrooms of UPHS, placing these events under the control of Defendant UPSD.

110.    Additionally, Plaintiff W.M. was verbally bullied on the bus, owned by Krise Transportation, for all of ninth grade.

111.    UPSD exercised significant control over both Plaintiff and his harassers, bullies, and peers, who were all students at either UPMS and/or UPHS.

112.    Additionally, upon information and belief, employees and agents of UPSD who were faculty and staff members of UPHS would also make comments to Plaintiff W.M. about his gender and sex and refuse to call him by the name and pronouns by which he preferred to be identified.  Their actions emboldened students to likewise mistreat Plaintiff W.M.

113.    That harassment, abuse, and/or bullying of which Defendants were fully aware, was severe enough to have the systemic effect of denying Plaintiff access to equal educational opportunity.

114.    The deliberate indifference, omissions, and failures to act described above caused Plaintiff to suffer physical and mental harassment, bullying, and abuse by other students enrolled in UPHS.

115.    Plaintiff D.P. made numerous complaints to UPHS and had meetings with Plaintiff W.M.'s emotional support teachers and assistant principal, Todd Amsler.

116.    Defendant UPSD and UPHS, by and through the acts of their employees, agents, servants, staff members, administrators, and teachers were made aware of and informed of the constant bullying and harassment and were responsible employees who had a duty to protect the life, liberty, and property of Plaintiff W.M., and because of their failure to take remedial measures with regards to the known instances of misconduct by James Doe and other students, Plaintiff suffered physical and mental torment, harassment, and abuse.

117.    Defendant UPSD and UPHS, by and through the acts of their employees, agents, servants, staff members, administrators, and teachers failed to comply with Title IX by failing to take ANY action with regards to prior reports and observations of bullying and harassment by James Doe and other students and continued to allow these students to be in a situation where they had the opportunity to prey on Plaintiff W.M..

118.    As a direct and proximate cause of the affirmative acts and omissions of Defendant UPSD and UPHS and its employees, agents, servants, staff members, administrators, and teachers that rise to such a level of deliberate indifference, Plaintiff suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress,

embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

119.    Plaintiff's injuries are so severe, pervasive, and objectively offensive, and as a direct result of Defendant UPSD and UPSH's acts and omissions, Plaintiff experienced a complete loss of educational benefits and opportunities afforded to him.

120.    Defendant UPSD's acts and omissions, as described above, were the direct and proximate cause of Minor-Plaintiff's injuries. Defendant knew, or should have known, that their actions and/or inactions would result in Minor-Plaintiff's grave physical, emotional, psychological, and other harm.

**COUNT II**
**VIOLATION OF 42 U.S.C. § 1983**
*Plaintiff D.P. on behalf of Plaintiff W.M. v. Defendant UPSD*
**Failure to Intervene**

121.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

122.    UPSD and UPHS are political subdivisions of the Commonwealth and therefore able to be held accountable pursuant to 42 U.S.C. § 1983.

123.    By their conduct and under the color of state law Defendant UPSD and UPHS had knowledge of the constant bullying, verbal and physical abuse, and harassment by the staff and other students at UPHS directed at Plaintiff W.M., specifically because he did not conform to the gender norms and present as his biological sex, and had opportunities and responsibilities to intervene and stop the abuse that was occurring to Plaintiff to prevent the violation of his clearly

established constitutional right under the Equal Protection Clause of the Fourteenth Amendment with deliberate indifference and failed to do so.

124.    Defendant UPSD and UPHS failures to intervene violated Plaintiff's clearly established constitutional right to equal education without discrimination based on gender under the Equal Protection Clause of the Fourteenth Amendment.

125.    The acts and omissions by Defendant UPSD and UPSH were made in a willful disregard for the safety of Plaintiff and a reckless or callous indifference for his protected rights.

126.    The acts and omissions by Defendant UPSD and UPSH as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries and therefore, Defendant UPSD is liable to Plaintiff under 42 U.S.C. § 1983 and the Fourteenth Amendment.

127.    Plaintiff's injuries are so severe, pervasive, and objectively offensive, and as a direct result of Defendant UPSD and UPSH's acts and omissions, Plaintiff experienced a complete loss of educational benefits and opportunities afforded to him.

128.    Plaintiff's constitutional rights to equal access of educational benefits and opportunities because of his gender under the Equal Protection Clause of the Fourteenth Amendment were violated as a result of the acts and omissions of Defendant UPSD.

129.    Defendant's acts and omissions as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries and are therefore liable to him under 42 U.S.C. § 1983.

### *State Law Claims*

### COUNT III
### <u>NEGLIGENCE</u>
### *Plaintiff D.P. on behalf of Plaintiff W.M. v. Defendant Krise Transportation*

130.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

131.    Defendant Krise Transportation serves as the bus transportation company for UPSD.

132.    Defendant Krise Transportation has a partnership with the American Student Transportation Partners ("ASTP") and Krise Transportation advertises that together with ASTP they are building safe, reliable student transportation programs for students across Pennsylvania.

133.    Krise Transportation undertook, for consideration, the provision of services to Plaintiff pursuant to Restatement (Second) of Torts § 323.

134.    Krise Transportation contracted with UPSD to transport minor children and as a part of that undertaking, they owed a duty to Plaintiff W.M. to not expose him to an increased risk of harm.

135.    Krise assumed this duty by agreeing to transport Plaintiff and other minors on behalf of UPSD.

136.    Krise knew or should have known about the continuous bullying which occurred on the bus because of the camera systems that should have been installed in every bus to provide interior audio and video monitoring on all Krise vehicles, which are for keeping students safer and encouraging healthy interactions between students, drivers, and parents.

137.    Defendant Krise Transportation at all times pertinent hereto had a duty to exercise reasonable care so as to supervise Plaintiff W.M. and also to supervise and control the conduct of third persons who might come into contact with Plaintiff W.M. so as to prevent harm to him while in the Defendant's care.

138.    Upon information and belief, all students had assigned seating on the bus.

139.    Prior to the incident on May 31, 2024, there was another incident on the bus between James Doe and Plaintiff W.M.'s friend, June Doe.

140.    It was in this incident, on April 3, 2024, that June Doe was called a faggot and smacked across the face by James Doe.

141.    Upon information and belief, June Doe identifies as a female and was targeted by James Doe because of her gender and because she did not conform to gender norms.

142.    Upon information and belief, no action was taken by Defendant Krise Transportation or by Defendants UPHS and UPSD.

143.    Krise Transportation did not reassign the seats even after they knew or should have known about the actions of James Doe, and they failed to protect all of the students on the bus, especially transgender students, including James Doe.

144.    According to the Pennsylvania School Bus Driver's Manual, school personnel have a legal responsibility to protect students from known or reasonably foreseeable harm occurring during or in connection with school activities.[9]

145.    Additionally, the school bus operator must document and report all incidents and allegations of bullying and harassment.[10]

146.    Defendant Krise failed to keep Plaintiff W.M. safe from reasonably foreseeable harm after knowing or having reason to know that student James Doe was a threat and danger to transgender students, specifically June Doe and Plaintiff W.M., and that continuing to allow James Doe to remain seated in close proximity to such students, without adequate supervision, and to act towards such transgender students in a harmful and harassing manner would subject W.M. to emotional and physical harm. The inaction of Defendant Krise in the face of known or reasonably

_____

[9] *See* Exhibit A, page B-17.
[10] *Id.* at B-18.

knowable information regarding the conduct of James Doe thus subjected Plaintiff W.M. to the harmful, offensive, and violent conduct of James Doe—resulting in Plaintiff W.M. being assaulted.

147.    The negligence, gross negligence, deliberate indifference, carelessness, recklessness, and willful misconduct of Defendant Krise Transportation Center includes:

a. failing to oversee, supervise, and/or monitor Plaintiff W.M. for his safety and wellbeing;

b. failure to oversee, supervise, and/or monitor students who abused, bullied, and/or harassed Plaintiff W.M.;

c. failing to oversee, supervise, and/or monitor Plaintiff W.M. so as to allow him to be the subject of physical and emotional abuse by his peers;

d. failing to acknowledge and address reports of bullying suffered by Plaintiff W.M., instead emboldening his abusers by punishing Plaintiff W.M., rather than those responsible for his abuse and/or bullying;

e. failing to create a safe environment for students, including Plaintiff W.M., as required by Krise;

f. failing to review and/or install camera systems that provide interior audio and video monitoring on Krise vehicles, which are designed to keep students safer and encourage healthy interactions between students.

148.    As a proximate and legal result of these failures and breaches committed by Defendant Krise Transportation, Plaintiff W.M. suffered damages and harm as outlined in the aforementioned paragraphs.

## **PRAYER FOR RELIEF**

**WHEREFORE,** in consideration of the above claims, Plaintiff D.P. on behalf of minor Plaintiff W.M. requests that a jury be selected to hear this case and render a verdict for the Plaintiff, and against the Defendants, and that the jury selected award damages to Plaintiff in an amount which will effectively prevent other similarly caused acts and adequately reflects the enormity of

the Defendants' wrong and injuries to the Plaintiff due to the Defendants' conduct, including but not limited to:

        a.      All available compensatory damages for the described losses with respect to each cause of action;

        b.      Past and future medical expenses, as well as the costs associated with past and future life care;

        c.      Past and future lost wages and loss of earning capacity;

        d.      Past and future emotional distress;

        e.      Consequential and/or special damages;

        f.      All available non-economic damages, including without limitation pain, suffering, and loss of enjoyment of life;

        g.      Punitive damages with respect to each cause of action where allowed;

        h.      Reasonable and recoverable attorney's fees;

        i.      Costs of this action; and

        j.      Pre-judgment and all other interest recoverable.

Further, Plaintiff requests that the Court enter judgment consistent with the jury's verdict and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

Respectfully Submitted,

BY:_____
    Gaetano A. D'Andrea, Esquire
    Michael J. McFarland, Esq.
    Ragha Narasimhan, Esquire
    LAFFEY BUCCI D'ANDREA REICH & RYAN, LLP
    1100 Ludlow Street, Suite 300
    Philadelphia, PA 19107
    Telephone: (215) 399-9255
    Facsimile (215) 841-8700
    Email: CVGDTeam@laffeybucci.com


    *Attorneys for Plaintiffs*

Date: August 20, 2025